## FRUEHAUF TRAILER CO. *v.* CITY OF DETROIT.

1. TAXATION—REVIEW OF ASSESSMENT ROLL—STATE TAX COMMIS-
SION.
> After an assessment roll has been passed upon by the common
> council, acting as a board of review, it is subject to inspection
> by the State tax commission (1 Comp. Laws 1929, § 3547).

2. SAME—NOTICE—JURISDICTION TO REVIEW ASSESSMENT.
> Neither the phraseology of a notice given a taxpayer by the
> State tax commission of complaint received as to personal prop-
> erty assessment nor the commission's failure to give notice that
> an investigation "of the taxpayer's books and records" had
> already been made by it would deprive it of its statutory
> authority to review the assessment rolls (1 Comp. Laws 1929,
> § 3547).

3. SAME—ASSESSMENT OF PERSONAL PROPERTY—NOTICE OF COM-
PLAINT.
> Notice of receipt of a complaint as to assessment of taxpayer's
> personal property is not a condition precedent to investigation
> thereof by the State tax commission (1 Comp. Laws 1929,
> § 3547).

4. SAME—STATE TAX COMMISSION—REVIEW OF LOCAL ASSESSMENT
ROLLS.
> The general property tax law is so designed as to confer upon
> the State tax commission authority to conduct a review when-
> ever it is made to appear that the local assessment rolls have
> not been prepared in accordance with the law, that is, when
> it appears that property is not being assessed at its true cash
> value or is being omitted altogether (Const. 1908, art. 10, § 7;
> 1 Comp. Laws 1929, § 3547).

REFERENCES FOR POINTS IN HEADNOTES
[3] 51 Am. Jur., Taxation, § 780.
[3] Notice to property owners of increase in valuation by board of
equalization or review.   24 A.L.R. 331; 84 A.L.R. 197.
[5] 51 Am. Jur., Taxation, § 777.

5. SAME—STATE TAX COMMISSION—JURISDICTION—REVIEW OF AS-
SESSMENTS.

    Under the general property tax law the State tax commission had
    jurisdiction to review and increase a tax assessment on per-
    sonal property of a corporation upon complaint of a taxpayer,
    who was also a member of a home-rule city's board of assessors
    (1 Comp. Laws 1929, § 3547).

Appeal from Wayne; Miller (Guy A.), J. Sub-
mitted January 4, 1948. (Docket No. 62, Calendar
No. 43,949.) Decided April 5, 1948.

Bill by Fruehauf Trailer Company, a Michigan
corporation, against the City of Detroit, and others
to restrain increasing assessment for taxes on plain-
tiff's personal property. Bill dismissed. Plaintiff
appeals. Affirmed.

*Fildew & DeGree* (*Fred G. Dewey* and *Howard H.
Campbell*, of counsel), for plaintiff.

*Raymond J. Kelley*, Corporation Counsel, and
*John H. Witherspoon*, Assistant Corporation Coun-
sel, for City of Detroit and its board of assessors.

*Eugene F. Black*, Attorney General, *Edmund E.
Shepherd*, Solicitor General, and *T. Carl Holbrook*
for Michigan State tax commission.

BOYLES, J. On October 15, 1947, plaintiff filed a
bill of complaint in the circuit court for Wayne
county in chancery asking that the State tax com-
mission be declared without jurisdiction to review
an assessment of taxes on its personal property for
1947, and that said State tax commission be enjoined
from taking any steps toward increasing plaintiff's
assessment. The defendants moved to have the bill
of complaint dismissed on the grounds, among oth-
ers, that the plaintiff had an adequate remedy at
law, and that the State tax commission had acquired

sole jurisdiction to review the assessments and to reassess plaintiff's personal property. The trial court granted the motion and plaintiff appeals. At the oral argument in this Court, counsel for the defendants withdrew the claim that the plaintiff had an adequate remedy at law, and the sole question here for decision is whether the State tax commission had acquired jurisdiction. Does the State tax commission have jurisdiction to review and increase a tax assessment for 1947 on the personal property of the plaintiff corporation?

The board of assessors of the city of Detroit assessed the personal property of the plaintiff for 1947 taxes at the sum of $4,679,020. The common council of the city of Detroit, acting as a board of review under the city charter, confirmed the assessment. On June 16, 1947, the board of assessors, by its secretary, sent a request to the State tax commission, as follows:

"Attached herewith is a list of taxpayers that filed personal property statements with this office and some that neglected to file statements for the years 1947-1948.

"Examination of the taxpayer's books and records discloses that the taxpayers either inadvertently or purposely omitted certain items of property or reported the property at less than the cost and true value. In the case of taxpayers that did not file, it was discovered after audit that the assessor's estimate was less than true value.

"We, therefore, respectfully request that you reassess the property of the taxpayers listed herein.

"The recommended assessments opposite each taxpayer's name are based upon audits of books, records, and other evidence of value."

Included in the list of taxpayers referred to in the above request was the name of plaintiff, with a re-

quest that the State tax commission reassess plaintiff's property in the sum of $8,548,250.

On the same date one Kenneth J. McCarren, a taxpayer of the city of Detroit who was also a member of the city board of assessors, sent the following request to the State tax commission:

"It is requested that your honorable body reassess the personal property of several taxpayers, in order that each be required to pay their equitable share of the tax burden.

"The recommendations of the board of assessors were submitted to you after each taxpayer's books and records had been examined by accountants and appraisers, and in each instance consideration was given to depreciation, obsolescence and other factors affecting the valuation of the taxpayers' property. It is imperative that the recommendations of the assessors should be considered and the assessments revised, otherwise great inequities and injustice will exist and other taxpayers will be required to pay excessive and unjust taxes that should be borne by the taxpayers listed in the assessor's recommendations.

"Therefore, I, Kenneth J. McCarren, a taxpayer, residing at 2162 Manistique avenue, in the city of Detroit, and paying real estate taxes on the property commonly known as 2162 Manistique avenue and personal taxes on the tangible property located at the above address, do hereby petition the State tax commission to review the assessments of persons named herein and revise assessments against said taxpayers, in order that all taxpayers shall be assessed equitably and pay their fair and just share of the cost of government."

On June 18th the State tax commission sent plaintiff by registered mail a notice of acceptance of jurisdiction of the matter, as follows:

"Official notice is hereby served that the commission is in receipt of a complaint from the Detroit

board of assessors relative to the improper assessment of the above described personal property located in the city of Detroit, which has been accepted for investigation in accordance with the provisions of Act No. 206, § 150, subd. 3, Pub. Acts 1893, as amended.

"This petition requests an adjustment of the 1947 personal property assessment of your company in the city of Detroit from the present figure of $4,679,020 to $8,548,250, based upon results of a recent audit of your personal property records by them. Photostatic copies of the audit and other pertinent data are now on file with this commission.

"Please give this official notice your immediate and careful consideration and advise this commission as to your position in this matter. FAILURE ON YOUR PART TO FILE A WRITTEN PROTEST WITH THIS COMMISSION WITHIN 10 DAYS OF THE MAILING OF THIS NOTICE, REQUESTING AN INVESTIGATION BY AND A HEARING BEFORE THIS BODY, WILL BE REGARDED AS WAIVER OF PROTEST."

The record before us does not show what action, if any, was thereafter taken by the State tax commission, but we find a statement in an affidavit made by Kenneth J. McCarren October 20, 1947, and filed on that date in support of defendants' motion to dismiss the bill of complaint in the instant case, to the effect that the list submitted to the State tax commission for review of the 1947 assessments had not yet been acted upon by the State tax commission.

The constitutional mandate with reference to ad valorem assessment of property is as follows:

"All assessments hereafter authorized shall be on property at its cash value." Michigan Constitution (1908), art. 10, § 7.

In so far as it applies to the issue before us, the statute defines the duties of the board of State tax commissioners * as follows:

"Sec. 150.  It shall be the duty of said board: *

"1.  To have and exercise general supervision over the supervisors and other assessing officers of this State, and to take such measures as will secure the enforcement of the provisions of this act, to the end that all the properties of this State liable to assessment for taxation shall be placed upon the assessment rolls and assessed at their actual cash value;

\* \* \*

"3.  To receive all complaints as to property liable to taxation that has not been assessed or that has been fraudulently or improperly assessed, and to investigate the same, and to take such proceedings as will correct the irregularity complained of, if any is found to exist;" 1 Comp. Laws 1929, § 3545 (Stat. Ann. § 7.208).

Authority to review assessment rolls and reassess property for taxes is conferred upon the board of State tax commissioners,* as follows:

"Sec. 152.  After the various assessment rolls required to be made under this act or under the provisions of any municipal charter shall have been passed upon by the several boards of review, and prior to the making and delivery of the tax rolls to the proper officer for collection of taxes, the said several assessment rolls shall be subject to inspection by said board of State tax commissioners * or by any member or duly authorized representative thereof and in case it shall appear to said board after such investigation, or be made to appear to

---

* By Act No. 155, § 2, Pub. Acts 1925 (1 Comp. Laws 1929, § 3706 [Stat. Ann. § 7.621]), the powers and duties of the board of State tax commissioners were transferred to the State tax department and the board abolished.  By Act No. 360, § 3, Pub. Acts 1927 (1 Comp. Laws 1929, § 3712 [Stat. Ann. § 7.633]), the powers and duties of the State tax department were transferred to the State tax commission and the department abolished.—REPORTER.

said board by written complaint of any taxpayer, that property subject to taxation has been omitted from or improperly described upon said roll or individual assessments have not been made in compliance with law, the said board may issue an order directing the assessor whose assessments are to be reviewed to appear with his assessment roll and the sworn statements of the person or persons whose property or whose assessments are to be considered at a time and place to be stated in said order, said time to be not less than 7 days from the date of the issuance of said order, and the place to be at the office of the board of supervisors at the county seat or at such other place in said county in which said roll was made as said board * shall deem most convenient for the hearing herein provided." 1 Comp. Laws 1929, § 3547 (Stat. Ann. § 7.210).

Under the above provisions, the assessment roll of plaintiff's personal property for taxes, after the assessment roll had been passed upon by the common council acting as a board of review, was "subject to *inspection* by said board of State tax commissioners * or by any member or duly authorized representative thereof." The State tax commission accepted jurisdiction upon the request of the board of assessors, and upon the written complaint of Kenneth J. McCarren individually, as a taxpayer. In addition, it had before it "photostatic copies of the audit and other pertinent data" based upon the results of a recent audit of plaintiff's personal property taken after plaintiff had filed a statement of its personal property with the Detroit board of assessors. The State tax commission gave plaintiff prompt "official" notice that it was in receipt of a complaint relative to the improper assessment of plaintiff's personal property. Neither the phraseology of the notice nor the failure to give notice that

* See footnote to p. 16.—REPORTER.

an "investigation" had already been made by the State tax commission can operate to deprive the State tax commission of its statutory authority to review the assessment rolls. The notice sent to plaintiff by the State tax commission on June 18th was not required by the statute as a condition precedent to action by the commission under section 152 hereinbefore quoted in part.

The plain fact is that the commission had complaints by the Detroit board of assessors, and by a taxpayer as an individual, that plaintiff had either inadvertently or purposely omitted certain items of property, or reported property at less than true value. The statute does not demand that the State tax commission make a formal declaration that it *"has* made an investigation," as a condition precedent to its power to act. In an analogous tax case, under this statute, holding that the order of the State tax commission was not fatally defective for failure to make it apparent how it came to be shown that the assessment required an investigation or review, the Court said:

"The sole point raised is that the order and petition should affirmatively allege that the former was based on an inspection of the rolls. We do not think that position well taken; but, if it were, it may be presumed that the State board had procured its information in the manner prescribed by the statute. This was official action, and we see no reason why the general presumption as to the validity of official action might not properly be invoked. But the statute does not in terms require an inspection of the rolls by the board. The statute simply provides that:

" 'The said several assessment rolls shall be subject to inspection by said board of State tax commissioners * or by any member, or duly authorized rep-

---

* See footnote to p. 16.—Reporter.

resentative thereof.'   Act No. 153, § 152, Pub. Acts 1913.

"The board* might get its information from any of the different sources pointed out by the statute. * * *

"It is too narrow a view to say that the words 'such investigation,' found in section 152, refer simply to the 'inspection' of the rolls; it is more reasonable to hold that they refer to all the other avenues open to investigation.   The words 'inspection' and 'investigation' are not synonymous; and it is more reasonable to say that the words 'such investigation' refer to the investigation, and examination of witnesses and documents referred to in the preceding sections, as above noted.   While the rolls are subject to the inspection of the board,* the statute does not make it obligatory upon the board * to make inspection thereof.   A mere inspection of the rolls probably would not determine whether there was an improper assessment, but 'such investigation,' as is mentioned in the preceding sections of the statute referred to, would naturally tend to throw light upon the subject.   In construing section 152 we should look, not only to its general purpose, but also to the other provisions of the tax law that are in point.   So considered, an intent is manifest to confer on the board of State tax commissioners * authority to conduct a review whenever it is made to appear that the local assessment rolls have not been prepared in accordance with the law; in other words, when it appears that property is not being assessed at its true cash value, or the property is being omitted altogether.   As stated, an inspection of the rolls alone might not, and probably would not, determine the existence of either fact."   *Board of State Tax Commissioners* v. *Kohler,* 193 Mich. 420, 426, 428.

Nor is there merit in appellant's argument that the complaint of McCarren individually, as a taxpayer, must be ignored by the State tax commission

---

* See footnote to p. 16.—Reporter.

because he was a member of the board of review. Appellant, to support its claim, cites *Davies* v. *National Land & Investment Co.*, 76 Ohio St. 407 (81 N. E. 755). The difference between that case and the case at bar is plain. In that case the only "complaint" that was filed was made by the clerk of the board of review, by order of the board of review, on which "complaint" the same board of review attempted to increase taxable values. The court said (p. 441):

"No interested taxpayer seems to have come forward to demand a readjustment of real estate values. Is the statute complied with by the filing of complaint by the clerk? If a case of perpetual motion is desired, such practice would be convenient, but it is not an automatic action that the statutes recognize or allow, but there must be a real complaint by some one interested in having a change of valuation and an equalization within the rules of the law."

Other cases relied upon by appellant from other jurisdictions * are under dissimilar statutes treating the jurisdiction of the reviewing tax authority as an "appeal" from the acts of inferior assessing officers. This is not the same situation as in this State where it is the statutory duty of the State tax commission "to receive all complaints as to property liable to taxation" and investigate the same. (Section 150, *supra*.)

---

* *Commonwealth* v. *Big Sandy Co.*, 155 Ky. 412 (159 S. W. 956); *State Tax Commission* v. *County Commissioners of Baltimore County*, 138 Md. 668 (114 Atl. 717); *State* v. *Ide Cotton Mills*, 175 Ala. 539 (57 South. 481); *In re Assessment of Muskogee Gas & Electric Co.*, 83 Okla. 167 (201 Pac. 358); *Borough of Kenilworth, Prosecutor*, v. *Board of Equalization of Taxes*, 78 N. J. Law, 302 (72 Atl. 966); *People, ex rel. Board of Supervisors of Westchester County*, v. *Hadley*, 14 Hun (21 N. Y. Sup.), 183.

The State tax commission had jurisdiction. The order dismissing the bill of complaint is affirmed, with costs to appellees.

Bushnell, C. J., and Sharpe, Reid, North, Dethmers, and Carr, JJ., concurred. Butzel, J., did not sit.